UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

            Plaintiff,

                          **Mag. Judge R. Steven Whalen**

   v.

                          **Nos. 11-20129** and **11-20066**

**VICTOR CASTANO,**

            Defendant.

_____/


**DETENTION HEARING**

**Tuesday, July 24, 2012**


Appearances:

| | |
|---|---|
| Eric M. Straus | David S. Steingold |
| U.S. Attorney's Office | Law Offices |
| 211 W. Fort Street, #2300 | 500 Griswold Street, #1630 |
| Detroit, Michigan  48226 | Detroit, Michigan  48226 |
| (313) 226-9100 | (313) 962-0000 |
| On behalf of Plaintiff | On behalf of Defendant |

-   -   -

*To obtain a certified transcript, contact:*
*Sheri K. Ward, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 219*
*Detroit, Michigan  48226*
*(313)965-4401 · ward@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Detention Hearing*
*Tuesday, July 24, 2012*

**I N D E X**

<u>Proceedings</u>                                    <u>Page</u>

Argument by Mr. Straus  ...........................4

Argument by Mr. Steingold  .......................5

Argument by Mr. Straus  ........................18

Argument by Mr. Steingold  .....................23

Examination By Mr. Steingold ...................17

<u>Witness</u>

   **Lucille Starks**

      Court Examination ........................12

      Examination By Mr. Straus ................14

      Examination By Mr. Steingold .............17

Certification of Reporter ......................30

-    -    -

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1                                Detroit, Michigan

2                                Tuesday, July 24, 2012

3                                4:10 p.m.

4                                  -   -   -

5          **THE CLERK:**  The court calls criminal matters

6   11-20066, Defendant Number 6, and 11-20129, Defendant

7   Number 12, *United States of America v. Victor Castano.*

8          **MR. STRAUS:**  Again, for the record, Your Honor,

9   Eric Straus on behalf of the United States.

10         **MR. STEINGOLD:**  David Steingold on behalf of

11  Mr. Castano, who is present to my left.  Your Honor, this is

12  the date and time set for a detention hearing.  I'm asking the

13  Court to seal the courtroom and have this made a sealed record.

14         **THE COURT:**  Why?

15         **MR. STEINGOLD:**  Well, Your Honor, may I approach

16  because there are civilians in the courtroom?

17         **THE COURT:**  Yes.

18      (Discussion held off the record.)

19         **THE COURT:**  Okay.  I'm not going to seal the record

20  except as I provided at sidebar.  So, with that, Mr. Straus, I

21  assume you are going forward with a proffer?

22         **MR. STRAUS:**  That's correct, Your Honor.

23         **THE COURT:**  And, again, I'll note for the record that

24  I have had the opportunity to read your written proffer as well

25  as the exhibit that was attached to it.

*Detention Hearing*
*Tuesday, July 24, 2012*                                    4

1          **MR. STRAUS:**  All right.  Thank you, Your Honor, and I

2     guess I would just move to incorporate by reference the facts

3     and recommendations contained in the Pretrial Services Report.

4          In light of the fact that the Court has read the written

5     proffer, I guess I'll be merciful in my summary of that, but,

6     as the Court is aware, Mr. Castano is charged in

7     two indictments.  This is a presumption case.  The Government

8     has moved for detention on the basis of risk of flight, danger

9     to the community.

10         Most significantly, Mr. Castano is charged in the '066

11    indictment in connection with his earlier case wherein

12    Mr. Castano and others are charged with conspiracy to suborn

13    perjury, conspiracy to obstruct justice, and individual

14    instances of suborning perjury.

15         He is also charged within the body of the

16    second indictment, the '129 indictment.  He is charged, he is

17    charged in the Rico, Count One, and I think that's the only

18    count.

19         He is charged, in addition, on the first indictment I

20    mentioned with mailing threatening communications, which the

21    letter that the Court has would form the basis of that, and

22    Count 6, which is conspiracy to distribute marijuana.

23         As mentioned, Mr. Castano is facing a considerable amount

24    of time.  It appears he would be looking at a recommended

25    sentence of 235 to 293 months in prison.  He has obviously a

1    criminal history, firearms and threatening witnesses.

2         We believe that the presumption cannot be overcome, and

3    therefore, there is no condition or combination of conditions

4    that will assure the safety of the community and assure

5    Mr. Castano's appearance at any further trial.

6              **THE COURT:**  Hang on one second, Mr. Steingold.

7         (Brief pause.)

8              **THE COURT:**  Okay.  Go ahead, Mr. Steingold.

9         **MR. STEINGOLD:**  Thank you, Your Honor.

10        Working backwards, I guess, let me first address the

11   letter that was just made reference to by Mr. Straus.

12        My client was incarcerated I believe it was 2006.  In 2007

13   he wrote a pretty angry letter to a witness that had testified

14   against him to the Court, and what it basically said, and I

15   think it's probably printed in the --

16             **THE COURT:**  I read the letter.

17        **MR. STEINGOLD:**  Thank you.  He basically said you

18   lied at me at trial, and if I had a chance, I would come after

19   you with, I think he said something about wrapping a bat or

20   pipe around his head.  He was talking in anger.  The person was

21   no longer a witness.  The trial was over.  My client wrote it

22   in anger, and that was five years ago.

23        He has been released, and he was released in 2006.  He has

24   not had a single problem in his supervision.  There has been no

25   allegation of any new criminal conduct.  There has no

1   allegations of any improper contact.  There has been no

2   violations of probation.  He has shown up each and every time.

3   There has never been a nonappearance.

4       I'm quite certain that that history is what made the

5   Pretrial Services conclude that they have no information to

6   suggest that the defendant is a risk of nonappearance.  He does

7   not have his passport.  He could be subjected to tethering or

8   any of the other conditions available to this Court.

9       As far as the information contained in the report, there

10  is a lot of things in there.  They make reference to

11  two killings.  Well, I don't know and can't answer for the

12  actions of the other defendants that are included because

13  there's 41, I believe, defendants in that Rico prosecution, but

14  there is nothing in that indictment that suggests that my

15  client was involved in any way in any killings.  For that

16  matter, the only information in that indictment pertaining to

17  Mr. Castano is the same allegations that make up the suborning

18  perjury charge and the letter that was just referenced.  That's

19  it.

20      They try and claim that my client was somehow involved in

21  methamphetamine and cocaine.  There is not a single incident

22  alleged in the indictment or can be cited by the Government to

23  suggest that my client was involved in methamphetamine and

24  cocaine in the time period in which the indictment is

25  inclusive, in which -- well, you know what I'm saying.  It's

1   not in the indictment.  There's nothing there.

2       They make a couple of other references.  They claim that

3   my client was convicted in 2008 of domestic violence, and

4   that's simply not true.  My client at one point was charged, I

5   believe earlier than that, but that charge was dismissed.  It

6   was not taken under advisement pursuant to statute.  It was

7   dismissed.  I do not know why that is in there.

8       I have present in court two people, Your Honor.  One is

9   Melissa Sue Gordon, my client's live-in girl friend and has

10  been since, well, 2005 or whenever, and if she were to testify,

11  and she's available if the Court would like to talk to her, she

12  would testify that Mr. Castano is not engaged in any illegal

13  activity, no use of drugs, nothing that would cause him to be

14  considered a risk to the community, and she's been with him the

15  entire time that he was -- he's been on supervision.

16      Also present in the courtroom is Mrs. Starks.  Ms. Starks,

17  would you please stand up.  Mrs. Starks is my client's

18  employer, and she would tell you that she was fully aware that

19  my client was a convicted felon.  She hired him and could not

20  be more pleased and is so convinced that he is not only

21  responsible but not a threat that she has told me that she

22  would put up her business as security for Mr. Castano to be

23  forfeited if he did anything in violation of any bond.

24          **THE COURT:**  What kind of business?

25          **MR. STEINGOLD:**  Ms. Starks?

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1          **MS. STARKS:**  I own two multiple-million-dollar

2    manufacturing companies, ASAP Designs and Mercury Metal Forming

3    and Technology.

4          **THE COURT:**  Okay.  Thank you.

5          **MR. STEINGOLD:**  Your Honor, so the point that I'm

6    trying to make is that since my client was released in 2006

7    there has been nothing, other than that letter and I'm not sure

8    of the date of that letter, and I think he was still in custody

9    at the time, but nothing since his release.  If I said 2006,

10   I'm mistaken.  He was released in 2009.  So nothing since 2009

11   when he was released that would suggest that he was a danger to

12   the community or a risk.

13         Your Honor, approximately two months ago there was an

14   indictment against a gentleman named David Drozdowski, who is

15   now a codefendant of my client, and at the time he was charged

16   there had been no issuance of any other indictment.  The AUSA

17   that was here at the time was Stanley Janice, and they

18   suggested in front of Magistrate Randon that I should probably

19   be disqualified because I'm going to be in conflict if and when

20   they bring the indictment.  It had been sealed.  It hadn't been

21   unsealed.  He wouldn't commit to that, but from the

22   circumstances it appeared pretty obvious that he was.

23         I suggested to Magistrate Randon that if there is an

24   indictment that conflicts me out, tell us about it and I'm off.

25   If not, there is no conflict and I'll have to be off whenever

 1   that's unsealed.  And Magistrate Randon agreed, and we went
 2   through the detention hearing.
 3        The point being -- and I think it was the next day, and I
 4   don't know how, but another magistrate entered an order
 5   disqualifying me.  Mr. Janice didn't know either, and I'm okay
 6   with that because I would have been disqualified anyhow.
 7        But the point I'm trying to make is that after that
 8   disqualification I have had many conversations with Mr. Straus
 9   as well as with Ms. Mohsin asking that if they do have an
10   indictment let my client surrender himself.  He's going show
11   up.  He's shown up each and every time you have ever asked him.
12   There has never been a risk of nonappearance, and they knew it.
13        They flat-out refused.  I was told that he's a bad guy and
14   they are going to do what they are going to do.
15        So that on Friday -- I'm trying to remember the date --
16   the 13th of July without giving me any warning they busted in
17   my client's door at 6:00 in the morning.  His 13-year-old son
18   and dog were there.  The dog apparently had a gun pointed at
19   him.  His kid was there as they grabbed my client as well as
20   Melissa Gordon.  They just took my client into custody.
21            **THE COURT:**  Let me interrupt just for a second.  I
22   think the Pretrial Services recommendation of detention is
23   based on dangerousness, not on risk of nonappearance.
24            **MR. STEINGOLD:**  All right, Judge.
25            **THE COURT:**  And, looking at the report, certainly

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1   Mr. Straus addressed this, but it appears that dangerousness is

2   really the prevailing factor we are talking about here.  So if

3   you want to focus on that, that would be good.

4          **MR. STEINGOLD:**  I will.  Your Honor, since my

5   client's release in 2009 there is absolutely no allegation that

6   he was involved in any conduct that could be considered --

7          **THE COURT:**  In 2009 he was released on the State

8   charge, right?

9          **MR. STEINGOLD:**  On the Federal charge.

10          **THE COURT:**  The Federal charge, excuse me, yeah.

11          **MR. STEINGOLD:**  And even before that, other than the

12   actions that are alleged in the indictment, which are suborning

13   perjury, which I don't necessarily think makes him a danger to

14   the community, and the letter, the angry letter that he wrote

15   to the past witness, there's nothing to suggest that he is a

16   danger to the community.

17      And there's some other facts, and if I could approach the

18   Court at sidebar with counsel, I would like to relate those

19   facts.

20          **THE COURT:**  You may.

21      (A sealed record took place out of the hearing of the

22      public at 4:33 p.m., and then the proceedings continued at

23      4:35 p.m., as follows:)

24          **THE COURT:**  Following the side bar, we are back on

25   the record, and Mr. Steingold, I believe you were proffering

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1    information or argument to the Court, if you want to continue.

2          **MR. STEINGOLD:**  Your Honor, all of the facts that I

3    want to bring out to the Court have been presented.  I'm

4    prepared to argue, but basically my argument is that, to the

5    extent that the Court would perceive that there is a danger to

6    the community, I don't think that that's proper in light of the

7    fact that there has been no allegations of any criminal conduct

8    on my client's part for the last five years and there's been no

9    allegations that he attempted to contact Mr. Rich or do

10   anything, fulfill the anger that he expressed in that letter of

11   2007.  There are certainly conditions available to this Court,

12   which would include third-party custody, tethering.

13         **THE COURT:**  Third-party custody with whom?

14         **MR. STEINGOLD:**  I'm sorry?

15         **THE COURT:**  Who would be the third-party custodian?

16         **MR. STEINGOLD:**  If allowed, it would be Melissa Sue

17   Gordon or his father, who is not here but would make it here if

18   he needed to be sworn in as a custodian, and all of the

19   available options to the Court.

20       For all of the reasons that I have already stated, I'm

21   asking this Court to grant my client release on bond.

22         **THE COURT:**  Let me ask you a question again.  I like

23   to make these decisions one way or another based on all of the

24   facts.  You indicated his employer -- and I forget her name.

25         **MR. STEINGOLD:**  Mrs. Starks.

*Detention Hearing*
*Tuesday, July 24, 2012*                                    12

1              **THE COURT:**  Mrs. Starks is willing to give a surety

2        of some kind.

3              **MR. STEINGOLD:**  Yes.

4              **THE COURT:**  I would like to get some more information

5        from Mrs. Starks.  Are you prepared to have her come up --

6              **MR. STEINGOLD:**  Please come up.

7              **THE COURT:**  -- Mr. Steingold, and have her placed

8        under oath.

9           Could you, first of all, state your full name for the

10       record.

11             **THE WITNESS:**  Lucille Ray Starks.

12             **THE COURT:**  How do you spell your last name?

13             **THE WITNESS:**  S-t-a-r-k-s.

14             **THE COURT:**  Raise your right hand, please.

15                        -   -   -

16                   **LUCILLE STARKS,**

17            being first duly sworn by the Court to tell

18            the truth, was examined and testified upon her

19            oath as follows:

20             **THE COURT:**  Where do you work?

21             **MS. STARKS:**  I own ASAP Designs and Mercury Metal

22       Forming and Technologies in Roseville.

23             **THE COURT:**  What kinds of businesses are those?

24             **MS. STARKS:**  It's anything to do with copper,

25       aluminum, steel.  We do automotive, Toyota seats.

*11-20066, 11-20129; U.S.A. v. Victor Castano*

*Lucille Starks - Court Exam*
*Tuesday/July 24, 2012*

13

1        **THE COURT:**  Is it manufacturing?

2        **MS. STARKS:**  Manufacturing, prototypes.

3        **THE COURT:**  How many employees have you got?

4        **MS. STARKS:**  50.

5        **THE COURT:**  50?

6        **MS. STARKS:**  Uh-huh.

7        **THE COURT:**  You have to say yes or no.

8        **MS. STARKS:**  Yes, sir.

9        **THE COURT:**  Now, Mr. Steingold -- actually I think

10 you indicated that you were willing to, I think your words

11 were, put your business up?

12        **MS. STARKS:**  I would have to talk to my husband about

13 it, but I --

14        **THE COURT:**  You are co-owners with your husband?

15        **MS. STARKS:**  Pardon me?

16        **THE COURT:**  You are co-owners with your husband?

17        **MS. STARKS:**  Yes, sir.

18        **THE COURT:**  And this business, 50 employees, I assume

19 it's a reasonably successful business?

20        **MS. STARKS:**  Yeah.  I own all of our equipment.  We

21 own everything.  We have worked from the bottom up.  We are

22 hard workers.

23        **THE COURT:**  Would you -- if I were to grant bond on

24 the condition that you provide what we call a surety, in other

25 words, you would have to pay cash, you would have to pay an

*Lucille Starks - Court Exam*
*Tuesday/July 24, 2012*

14

 1  amount of money if --

 2          **MS. STARKS:**  If he didn't show up?

 3          **THE COURT:**  If he didn't show up.

 4          **MS. STARKS:**  Would I do that for him?

 5          **THE COURT:**  Yes.

 6          **MS. STARKS:**  Yes, I would.

 7          **THE COURT:**  Mr. Straus, do you have any questions?

 8          **MR. STRAUS:**  Yes, I do, Your Honor.

 9          **THE COURT:**  Go ahead.

10                          -  -  -

11                      EXAMINATION

12  **BY MR. STRAUS:**

13  **Q.**   Ma'am, if I could ask you a few questions.

14  **A.**   Sure.

15  **Q.**   You are aware that Mr. Castano is currently a member of

16  the Devil's Disciples Motorcycle Club?

17  **A.**   When Victor came to me, he explained everything to me

18  fully and honestly before I hired him.  I put him on a 90-day

19  probation period, okay?  Victor has worked for me for pretty

20  close to five years.  50 people in our company are even willing

21  to write letters.  I have never had a problem with Victor.

22  He's like a big teddy bear.  He's never given anybody a

23  problem.  He's at work.  He's set up our whole welding

24  department.  He does everything he's asked without --

25          **THE COURT:**  He's set up what?

*11-20066, 11-20129; U.S.A. v. Victor Castano*

*Lucille Starks - Government Exam*
*Tuesday/July 24, 2012*                                    15

1      **MS. STARKS:**  The welding department.  He's a welder.

2  Actually he manages the welding department, and he does a very

3  good job at it.  He doesn't miss work.  I have seen him around

4  his children.

5      **MR. STEINGOLD:**  Let him ask questions.

6  **BY MR. STRAUS:**

7  **Q.**  Ma'am, do you or your husband, do you know of any other

8  members of the Devil's Disciples Motorcycle Club?

9  **A.**  Nobody.  Not affiliated.

10  **Q.**  Do you associate with any bikers?

11  **A.**  No.  My brother is a Clinton Township police officer.  So,

12  I mean, I know law enforcement.  I have people in law

13  enforcement, but I have never met a biker.

14      **MR. STRAUS:**  I have no further questions, Your Honor.

15      **THE COURT:**  Okay.  Mr. Steingold, do you have any

16  questions?

17      **MR. STEINGOLD:**  I have nothing else, Your Honor.

18      **THE COURT:**  Mr. Castano is employed with you now?

19      **MS. STARKS:**  Correct.

20      **THE COURT:**  Is that a full-time job?

21      **MS. STARKS:**  Yes.

22      **THE COURT:**  Is that a 9:00 to 5:00 situation or what

23  kind of hours do you work?

24      **MS. STARKS:**  7:00 to 3:30 unless they are needed

25  later or on Saturday or Sunday, whatever, but whenever I have

*11-20066, 11-20129; U.S.A. v. Victor Castano*

*Lucille Starks - Government Exam*
*Tuesday/July 24, 2012*

16

1    asked Victor to work on Saturday or Sunday I have never had a

2    problem.

3         **THE COURT:**  And he's been working with you

4    continuously since when?

5         **MS. STARKS:**  For about five years.

6         **THE COURT:**  Well, if he didn't get released from

7    prison until 2009 --

8         **MS. STARKS:**  Well, I have his records with me.  I

9    have 50 employees that come and go so it's pretty hard.  I

10   really didn't go through his files, but I made copies.

11        **THE COURT:**  Hang on a second.

12   Mr. Straus, when was Mr. Castano arrested, do you have an

13   approximate, on this indictment?

14        **MR. STRAUS:**  July 13th.

15        **THE COURT:**  July 13th.

16   I ask because there's an indication in the Pretrial

17   Services Report, and I'll direct this to you, Mr. Steingold,

18   that he was employed at Automotive Stamping and Prototype --

19   That's your company, right?

20        **MS. STARKS:**  That's my company, too.  I have two.

21        **THE COURT:**  And it says an end date of April 1st of

22   2012.

23        **MS. STARKS:**  And then we merged with Mercury.

24        **THE COURT:**  Hang on.

25   I guess my question is:  Did he stop employment with you

*11-20066, 11-20129; U.S.A. v. Victor Castano*

*Lucille Starks - Government Exam*
*Tuesday/July 24, 2012*                                    17

1    at some point this year?

2              **MS. STARKS:**  Okay.  Here is the thing.  When we

3    opened up Mercury, he stopped employment at ASAP and went

4    straight to Mercury to open -- he's the one that headed our

5    welding department over there.

6              **THE COURT:**  At Mercury?

7              **MS. STARKS:**  So he never stopped working for me.

8              **THE COURT:**  At Mercury?

9              **MS. STARKS:**  At Mercury.

10             **THE COURT:**  Okay.  Thank you, ma'am.

11             **MR. STEINGOLD:**  May I ask one question, Your Honor?

12             **THE COURT:**  I'm sorry?

13             **MR. STEINGOLD:**  May I ask her a question?

14             **THE COURT:**  Oh, sure.

15                          -   -   -

16                        **EXAMINATION**

17    BY MR. STEINGOLD:

18    **Q.**   I don't know whether or not the records indicate when he

19    actually started, but do you know how long it was after he was

20    released that he came to your business?  Do you have any idea?

21    **A.**   I really don't recall the exact date, but when he did

22    come, he was very honest, up front and forward with me about

23    everything.

24    **Q.**   And you do have records here that indicate he was employed

25    with your company in 2009?

*11-20066, 11-20129; U.S.A. v. Victor Castano*

*Lucille Starks - Cross*
*Tuesday/July 24, 2012*                                    18

1   **A.**   If that's what it says, that's right.  Is that for ASAP?

2   **Q.**   I don't know what it is.

3   **A.**   I don't have my glasses on.

4   **Q.**   This is for ASAP.

5   **A.**   Yes.

6          **MR. STEINGOLD:**  Mr. Straus, if you want to see this.

7          **MR. STRAUS:**  No.

8          **THE COURT:**  Okay.  Thank you, ma'am.  You can sit

9   down.

10      All right.  Mr. Steingold, anything else?

11         **MR. STEINGOLD:**  Nothing else, Your Honor.

12         **THE COURT:**  Mr. Straus?

13         **MR. STRAUS:**  Yes, Your Honor, just briefly.

14      To use Mr. Steingold's term, the United States continues

15  to maintain that Mr. Castano is a bad guy.  When we look at, in

16  terms of trying to prognosticate what a defendant will do while

17  on release, the best evidence of what they will do is the past

18  history of supervised release, and in this case Mr. Castano in

19  a less significant case where the stakes were not as high

20  actively suborned perjury.

21      And I will remind the Court that in the written proffer in

22  one instance one of Mr. Castano's codefendants actually

23  threatened one of the witnesses, specifically that if she did

24  not go along with the plan he would get her seventeen-year-old

25  daughter addicted to methamphetamine and turn her into a

*11-20066, 11-20129; U.S.A. v. Victor Castano*

prostitute, something that I believe this witness took to heart

and believed because that is something that is consistent with

what the Devil's Disciples do.

Secondly, it is not true that he, Mr. Castano, has not had

any problems while on supervised release.  And, as mentioned in

the written proffer, in February and March of 2012 while he was

on supervised release, and I understand it was a four-year

supervised release term that was imposed, the Government

maintains that he was harboring a person by the name of

David Roberts.  He is a codefendant.  The FBI had been looking

for Mr. Roberts to arrest him, I believe it was on a complaint,

it might have been the indictment, for about a month.

Mr. Roberts was living, and Mr. Roberts is a Devil's Disciple

as well, living with him at his home, which would be in clear

violation of his supervised release because Mr. Roberts is a

convicted felon and here he is cavorting with known felons and

members of the Devil's Disciples.

And, finally, in terms of "Mr. I Will Surrender Myself If

Given The Opportunity," one might ask why the door had to be

broken down, and the quick answer is that because, although he

was known to be in the house, he would not come out and

therefore the Government or the FBI agents took measures to

secure the appearance of "Mr. I Will Surrender."  And it's

noteworthy that that allegation, you may note, Your Honor, has

not been made by any other defendant.

1        In addition, in terms of custody with Melissa Sue Gordon,

2   Melissa Sue Gordon was a codefendant in the earlier case before

3   Judge Zatkoff.  She was convicted, and so -- and she is a

4   convicted felon.  She is, as such, perhaps an unsuitable

5   candidate, role model for Mr. Castano, and I think based on his

6   one time on pretrial release and his clear violation of that,

7   to the extent of actually suborning perjury, I think it would

8   be a huge leap of faith on the part of the Government to give

9   Mr. Castano now the opportunity to be on supervised release

10  absent some indication that he has made a colossal turnaround

11  in his outward attitude in life, and I don't believe that is

12  the case.

13       So, as such, the Government maintains that he is a risk of

14  flight, and there are no conditions or combination of

15  conditions that will assure the safety of the community,

16  particularly potential witnesses against him in this particular

17  case, and I think the threat remains that he is willing to do

18  everything and anything to get out of trouble when faced with

19  charges.  So --

20            **THE COURT:**  Just a couple of questions on this

21  harboring David Roberts' situation.  When was Roberts arrested?

22            **MR. STRAUS:**  He was arrested in February/March of

23  2012 on this case.

24            **THE COURT:**  On this case, okay.

25            **MR. STRAUS:**  He was charged in an earlier superseding

*Lucille Starks - Cross*
*Tuesday/July 24, 2012*                                    21

1    indictment, and one other thing I should mention --

2            **MR. STEINGOLD:**  Well, let's, let's, if I may --

3            **THE COURT:**  Hang on a second.  What I'm interested in

4    is, when you say he was harboring David Roberts to avoid

5    Roberts' arrest, are we talking about his arrest on this case?

6            **MR. STRAUS:**  Yes.

7            **THE COURT:**  Okay.  And --

8            **MR. STRAUS:**  David Roberts' arrest on this case.

9            **THE COURT:**  Roberts' arrest, right.  Roberts was

10   living with him?

11           **MR. STRAUS:**  He was living with him, which at a

12   minimum it would be a violation of his supervised release to be

13   having contact with convicted felons.  I will proffer to the

14   Court that Mr. Roberts knew that he was going to be charged,

15   and that would be the explanation for him living with

16   Mr. Castano.

17           **THE COURT:**  Did Castano know he was going to be, that

18   Roberts was going to be charged?

19           **MR. STRAUS:**  In February/March of 2012, I don't know.

20           **THE COURT:**  Okay.

21           **MR. STRAUS:**  But at a minimum you have contact, you

22   have suspicious circumstances, and one other thing, Judge,

23   which I forgot to mention.  This is, this is an irreconcilable

24   conflict that is in the Pretrial Services Report, and I think

25   the Court knows this.  According to Mr. Castano and his

1  girl friend, he has been unemployed since April 2nd of 2012 and

2  is receiving unemployment benefits in the amount of $220 per

3  week, and that was information he provided, I presume -- and

4  that was information he provided on July 13th of 2012.

5      We now have information from a third party that he has

6  been continuously employed.  Those are irreconcilable

7  differences.  Either Mr. Castano is falsely receiving

8  unemployment benefits and money under the table or he indeed

9  was truthful when he said that he was unemployed, he was

10 unemployed as of April 2012.

11          **THE COURT:**  Hang on a second.

12          **MR. STEINGOLD:**  I'm sorry.

13          **THE COURT:**  My second question is -- you've got to

14 address me and not him.

15          **MR. STEINGOLD:**  I'm sorry, Your Honor.  I was just

16 looking at him to see if he was done.

17          **THE COURT:**  Address me in a second.  I have another

18 question.  And,I'm sorry, this is the first I have heard about

19 the incident with Mr. Castano's arrest with the door being

20 broken down.  Could you give me a few more facts on that or did

21 I misunderstand?

22          **MR. STRAUS:**  I will proffer to the Court that the

23 agents arrived early in the morning.  They were aware that

24 Mr. Castano and Melissa Sue Gordon were in the house.  My

25 understanding is that they did not come out and were forced to

*Lucille Starks - Cross*
*Tuesday/July 24, 2012*

23

 1  execute the arrest warrant forcibly and so which I think --

 2      **THE COURT:**  This was Mr. Steingold's argument about

 3  volunteering.

 4      **MR. STRAUS:**  This was his argument, but one might ask

 5  why is that since no other defendant makes the same claim.  And

 6  the explanation, of course, is, as I mentioned, "Mr. I Will

 7  Surrender Myself" was not going to surrender, and I think that

 8  that conduct alone again is consistent with his prior history

 9  of just disregard of the law.

10      It is a lawless existence, and quite frankly, I cannot

11  think in 25 years as an AUSA where that many people got

12  together and successfully were able to suborn perjury before a

13  federal judge, and he is, he is one of those folks.

14      I think, I think whatever the reasons for his release

15  before may have been seemingly well grounded, but shame on us

16  if we allow him to be released again without any kind of

17  intervening type of event that would suggest that he has

18  changed his ways.

19      **THE COURT:**  Mr. Steingold, I'll give you the last

20  crack here.

21      **MR. STEINGOLD:**  Thank you.

22      First of all, as far as this allegation of some woman

23  being threatened to be turned into a prostitute, I read that

24  allegation and I can't find anything that shows that

25  Victor Castano was part of it or knew anything about that.

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1          Secondly, about harboring the fugitive, Mr. Roberts was

2    not under indictment at the time, and there's no information

3    that my client knew that he was, he was under indictment or --

4          **THE COURT:**  But he was a convicted felon.

5          **MR. STEINGOLD:**  Apparently he was, and I don't know,

6    I assume my client knew that, but I am told that on March 5th,

7    2012, the day the indictment was unsealed, they arrested

8    Mr. Roberts.  He wasn't hiding anything.

9          As far as Ms. Gordon, she has not been charged in this

10   case, and I think would be at least an acceptable candidate for

11   third-party custody.  I'm not indicating --

12         **THE COURT:**  Well, she was in the previous case

13   though.

14         **MR. STEINGOLD:**  She was in the previous case.  She

15   was convicted on that.

16         As far as the demeaning comments the AUSA made about my

17   client, referring to him as "Mr. I Want To Surrender," I think

18   that, if asked, Mr. Straus would verify that on at least

19   three or four occasions I made that request.  And Ms. Gordon is

20   here and would tell the Court that what happened is they knew

21   this was coming, they knew it was coming because I told them it

22   was coming, and they decided they were going to go home and

23   wait for it because they have nowhere else to go and they have

24   a dog, he has a son, and they want to deal with this.

25         At 6:00 in the morning there was one knock.  My client's

1    son was downstairs.  Melissa Sue Gordon was halfway down the

2    stairs when they busted in the door.  My client was upstairs in

3    bed.  There was no indication that he was prepared to leave or

4    was prepared to fight off the agents.  They knocked one time at

5    6:00 in the morning and came in.

6        I'm told they drew a gun while my client's 13-year-old son

7    was sleeping on the couch and his dog even had a gun pointed at

8    him, and he was arrested.  To suggest that that shows that he

9    was not willing to surrender himself, I think is exactly the

10   opposite of what was true.  Knowing full well that the

11   indictment was coming and having an opportunity to absent

12   himself at that point, he was at home.  He wasn't going

13   anywhere.

14       And as far as the employment is concerned, Your Honor, my

15   client tells me, and he can tell the Court, that he, as

16   Ms. Starks indicated, that he was temporarily laid off and they

17   had a startup date.  He set up the welding in the new company

18   and was going to begin employment when this all came down, and

19   she'll verify that.  He did not lie to Pretrial Services.

20       As far as the conduct, he says the best way to judge on

21   how somebody would act on supervised release is to see how he's

22   been acting on release.  Well, he's been on release since 2009,

23   and as I have indicated, and as Pretrial Services can confirm,

24   there has not been a single violation of any sort.  He's never

25   been late.  He's never tested positive.  He has never done

1    anything to cause his supervising probation officer any concern

2    whatsoever.

3        In sum, Your Honor, while I cannot argue that the conduct

4    with which my client is charged is extremely serious, it's

5    conduct that is alleged to have happened five and six years ago

6    and there is nothing to show that there isn't a combination of

7    conditions that can be imposed to not only assure his presence

8    but to alleviate any perceived danger to the community.

9        **THE COURT:**  Okay.  Thank you.

10       One minute.

11       Well, there are some things on both sides here that I

12   think make this a little more difficult than some of the cases.

13   The issue -- first of all, it is a presumption case given the

14   controlled substance charge, rebuttable presumption of

15   detention.

16       The question is one of danger to the community.  I agree

17   with Pretrial Services that in terms of risk of flight there

18   are conditions that we could set to assure that Mr. Castano

19   will appear as required, but really the question revolves

20   around whether there is a danger to the community, and that

21   would include a lot of factors.  That would include criminal

22   activity, possibility of criminal activity, possibility of

23   obstruction, as we have charged in the indictment in relation

24   to his 2006 case.

25       And one of the things that I've got to tell you concerns

1    me is -- and, Mr. Steingold, you make some persuasive

2    arguments, and I think that Mr. Castano is an individual who,

3    not unlike many individuals, acts in his own self-interest.  He

4    does what he perceives is in his own self-interest.

5         We have talked about the arrest situation with the dog.

6    You can put a different spin on that.  Is it because he didn't

7    have time to get to the door or was it because there was some

8    kind of resistence to something that was happening that he

9    thought had been worked out, that he would be able to

10   self-surrender.

11        You have the situation with the charges of suborning

12   perjury, which are very serious charges.  You have -- and I

13   understand that the threatening or alleged threatening of this

14   witness, according to the proffer here, wasn't, you know,

15   wasn't Mr. Castano himself, but he was involved in the whole

16   scheme.

17        You have the situation with David Roberts.  Well, I don't

18   know, it's true I don't see any real hard information that he

19   knew Mr. Roberts was under indictment at the time, but I think

20   it's fair to assume that there is a probability he knew he had

21   a criminal conviction, which would have been a violation of his

22   supervised release.

23        Then you've got the thing with the employment at

24   Automotive Stamping and Prototype where --

25             **MS. STARKS:**  It's Mercury Metals.

1          **THE COURT:**  Don't speak, don't speak.  No speaking.

2     I have heard you.  Okay?  We don't get comments from the

3     audience.

4          You know, we have information he's been working there

5     continuously, that when he left Automotive Stamping that he

6     went to Mercury, but yet we have a statement here in the

7     Pretrial Services Report -- I'm looking at the date.  The date

8     of this is July 16th.  He advised, Mr. Castano advised, and his

9     girl friend confirmed, that he was laid off in March, and she

10    further confirmed that he receives, present tense, unemployment

11    benefits in the amount of 220 per week.  I, I don't doubt

12    Ms. Starks' sincerity in saying that he did have a job, that

13    he's been a good worker.

14         There are too -- I don't know how else to put it, but

15    there's too much of a song and dance going on here, and given

16    the totality of circumstances, the 2006 conviction, the

17    suborning, the alleged suborning of perjury, of which there is

18    probable cause based on the indictment, the employment

19    situation, the situation with the arrest, I've got to go with

20    the Pretrial Services Report.

21         And I have as well, you know, listened to the side bar

22    proffer and considered that as well.  You've got some good

23    things going for you and you've got some bad things going for

24    you, but I have got to make a balancing decision here, and the

25    balance convinces me that there are no conditions that I could

1  set that would reasonably assure, reasonably assure the safety

2  of the community.  So on that basis, Mr. Castano, I'm going to

3  order you detained pending trial.

4      Talk to your attorney before you talk to me.

5          **MR. STEINGOLD:**  Your Honor, he wanted to address the

6  Court.  I don't have a problem with it if the Court is willing

7  to allow him.

8          **THE COURT:**  Go right ahead.

9          **THE DEFENDANT:**  I would just like it to be on the

10  record, sir, that when I spoke with Pretrial Services I told

11  them that I was on a very temporary layoff and that I had a

12  return-to-work date.  So there's nothing going on there.  You

13  could maybe talk to the Pretrial Services guy and see if, you

14  know, that's what I told him.  I had a return-to-work date.  It

15  was a very temporary layoff.

16          **THE COURT:**  Is Mr. Heald [sp] here?

17          **PRETRIAL SERVICES OFFICER:**  No, Your Honor.  He's

18  actually on annual leave.  He's on vacation.

19          **THE COURT:**  He's on vacation.  What day does he get

20  back?

21          **PRETRIAL SERVICES OFFICER:**  I don't know.  I could

22  find out.

23          **MR. STEINGOLD:**  I don't know if that would make a

24  difference in the Court's ruling.

25          **THE COURT:**  I'm not sure.  I mean, that's one factor,

*11-20066, 11-20129; U.S.A. v. Victor Castano*

1    one factor out of many.  I really, if it were just that, okay,

2    if it were just that, I guess I would give you a pass on that,

3    but given your history of suborning perjury and the situation

4    with Mr. Roberts and the arrest, that's not going to tip the

5    balance.

6         So on that basis, Mr. Castano, I will order you detained.

7         **MR. STRAUS:**  Thank you, Your Honor.

8         **MR. STEINGOLD:**  Okay.  Thank you, Your Honor.

9         (Proceedings concluded at 5:01 p.m.)

10                              -   -   -

11                    **C E R T I F I C A T I O N**

12        I certify that the foregoing is a correct transcription of

13   the record of proceedings in the above-entitled matter.

14

15   s/ Sheri K. Ward_____                 August 3, 2012
     Sheri K. Ward                           Date
16   Official Court Reporter

17                              -   -   -

18

19

20

21

22

23

24

25

*11-20066, 11-20129; U.S.A. v. Victor Castano*